FILED: **2/25/22**
U.S. DISTRICT COURT
EASTERN DISTRICT COURT
DAVID A. O'TOOLE, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS IN PLANO, TX

| | |
|---|---|
| In the matter of Search of<br><br>JOANNA CHEN, | Docket No. 4:21-NJ-733<br><br>**4:22cv130 SDJ/KPJ**<br><br>MOTION TO RETURN<br>PROPERTY RULE 41(g) |

TO: The U.S. District Attorney in Plano, TX

Please take notice that upon the Declaration of Joanna Chen, wife of BingLi Lin, dated February 2, 2022 and all prior pleadings and proceedings, and the Warrant signed and executed in this case, the Movant Joanna Chen will move the United States District court for the Eastern District of Texas in Plano Texas, at the US Courthouse located at 7940 Preston Rd, Plano, TX 75024 on March 9, 2022 at 9:30 am or as soon thereafter as Movant can be heard, pro se for the relief of directing the District Attorney Office to return to movant all assets seized pursuant to such warrant, on the ground that there was no probable cause to seize US minted coins, and/or that the coins seized from movant are not forgeries and/or that no criminal activity or intend to defraud existed, and/or the issuance of the warrant and its execution do not meet 4th Amendment standards.

Dated: Allen, Texas
February 2, 2022

_____
Joanna Chen
405 Club House Dr, Allen TX 75002

To: Mr. Jay Combs
US Attorney Eastern District of Texas, Plano Office
101 E. Park Blvd., Suite 500, Plano, Texas 75074
USATXE.Public-Affairs@usdoj.gov
Phone: (972) 509-1201, Fax: (972) 509-1209

Email to Court: shrcrimdocs@txed.uscourts.gov

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS IN PLANO, TX

_____   Docket No. 4:21-NJ-733

In the matter of Search of              **DECLARATION**

JOANNA CHEN,

_____

JOANNA CHEN, hereby declares and sets forth as follows:

1. I am the movant in this case. I am the wife of Bingli Lin who is the person targeted by the six warrants which I am seeking to return property. The warrants were signed by a Judge at the Eastern District of Texas: 4:21-MJ-731, 4:21-MJ-732, 4:21-MJ-733, 4:21-MJ-734, 4:21-MJ-735, 4:21-MJ-736. All of these warrants pertain to my husband's assets, business and activities.

2. These warrants were issued without probable cause, without any reasonable evidence that I defrauded anybody, or that I was in engaged in any lawful activity. The warrants do not meet the 4th amendment standards.

3. More than reasonable time passed since the execution of the warrants and the officers who had plenty of time to examine the coins (and the electronic data in telephones and other electronic equipment) did not respond to the undersigned with any explanations.

4. Therefore, I ask the court to suppress the warrants and quash it, and return to me everything that was seized.

5. My husband is a resident of Texas of Chinese origin and in his spare time he is trying to earn a modest living by redeeming damages US coins (such as quarters and dimes) into cash either in Banks that are licensed by the US Treasury to accept them, or at Coinstar, Inc. facilities who are licensed to redeem damaged or uncurrent coins, and indeed do so on a regular basis without interruptions.

6. I state unequivocally that all the coins are authentic US coins and they are not counterfeit. My husband bought them from sources in China who obtain them in industrial and commercial garbage dumps, and metal scrap yards.

7. In fact, there is absolutely no economic sense in forging American coins because the composition of the metals is too expensive to make any economic sense in making a profit from forging US coins.

8. On two occasions, my husband has been the victim and target of ex parte warrants (or other instruments of action) to search our homes and properties, purportedly for the purpose of seizing coins suspected as counterfeit. The detention notices and warrants were requested (and issued) without any probable cause whatsoever, since Bingli Lin never dealt with or possessed or redeemed counterfeit coins. Neither dis Bingli Lin have any connection to any organization that forges coins or deals with them.

9. The coins were seized on 2 occasions. The first occasion was on July 18, 2018 when the US agents advised via the customs broker that the shipment was on CBP hold, and thereafter on December 13, 2018 Customs seized the property and in January 4, 2019 a Notice of Seizure was issued pursuant to 49 U.S.C. §30112(a).

10. The second occasion was recently on September 10, 2021 by of a warrant to search premises and the car.

11. As to the first seizure in 2018 Bingli Lin waited 2 months for the return of the property and after seeing that no response was forthcoming he hired a lawyer from New York, Mr. Solomon S. Abady who wrote a Petition for Remission or Mitigation of Forfeiture dated January 29, 2019.

12. I am not aware of any official response to Mr. Abady's petitions other than oral requests that the Government needs more time.

13. On that occasion, **Bingli Lin** was requested to bring the coins himself to the China Airlines Warehouse. The value of those coins was estimated at $10,000, and the loss on that value was $8,000.

14. On the second occasion, our house in 405 Club House, Allen TX 75002 was raided by some 10 Secret Service Agents holding **6 warrants** to search 3 people, the premises and the cars for coins.

15. In the garage of my house some coins worth $150,000 were found and seized. Also seized were all electronic equipment including desktop computer, laptop, cell phone, iPad and about $8,400 in cash.

16. The six warrants are as follows:

16.1 Warrant to search the person of **BingLi Lin** docketed as 4:21-MJ-731 in the U.S. District of Texas (Eastern Dist.) and signed on Sep. 10, 2021 by the Hon. Judge Kimberley C. Priest in Plano, TX. Under this warrant the following was seized: (1) blue Iphone, (2) 1 RBFCU receipt, (3) Black phone case with words Skrex.

16.2 Warrant to search the person of **Chuangui Chen** docketed as 4:21-MJ-732 in the U.S. District of Texas (Eastern Dist.) and signed on Sep. 10, 2021 by the Hon. Judge Kimberley C. Priest in Plano, TX. Under this warrant the following was seized: (1) one Iphone.

16.3 Warrant to search the person of **Joanna Chen** docketed as 4:21-MJ-733 in the U.S. District of Texas (Eastern Dist.) and signed on Sep. 10, 2021 by the Hon. Judge Kimberley C. Priest in Plano, TX. Under this warrant the following was seized: (1) one black Iphone, (2) one black Iphone case.

16.4 Warrant to search **the premises located at 405 Club House Dr. Allen, TX** belonging to **BingLi Lin** and wife Joanna Chen docketed as 4:21-MJ-734 in the U.S. District of Texas (Eastern Dist.) and signed on Sep. 10, 2021 by the Hon. Judge Kimberley C. Priest in Plano, TX. Under this warrant the

following was seized: (1) 173 bags of quarters,, (2) 24 bags of mixed coins, (3) $8,444 in cash, (5) misc. receipts and papers documents, (6) 1 black storage bin, (7) 2 Ipads, (8) 6 cell phones, (9) 1 bag of half dollars, (10) 70 boxes UPS unopened (11) 3 bags containing plastic bags, (12) 40 white bags containing coins, (13) 21 bags of dimes, (14) 3 wooden crates, (15) Home Depot 5 gallon tab containing coins, (16) 1 laptop, (17) 1 desktop.

16.5   Warrant to search the **car White Honda** docketed as 4:21-MJ-735 in the U.S. District of Texas (Eastern Dist.) and signed on Sep. 10, 2021 by the Hon. Judge Kimberley C. Priest in Plano, TX. Under this warrant the following was seized: (1) small bag (clear) containing coins in driver's side door, (2) large bag (cloth) containing coins right rear passenger seat, (3) 1 large bag (cloth) with coins in baggage, (4) target bag of coins, (5) 8 ziploc bags of coins, (6) small bag (clear) with dime "like" coins, (7) single dime "like" coin.

16.6   Warrant to search the **car Black Tesla** docketed as 4:21-MJ-736 in the U.S. District of Texas (Eastern Dist.) and signed on Sep. 10, 2021 by the Hon. Judge Kimberley C. Priest in Plano, TX. Under this warrant the following was seized: (1) one black Wells Fargo bank bag, (2) one Wells Fargo Bank transaction receipt, (3) one white potato sack, (4) six clear plastic bags, (5) one clear plastic bag with loose change.

17. Note: 2 Iphones, 1 Laptop belonging to my wife Joanna Chen's company, $8,400 cash belonging to me and Chuangui Chen, were returned to us in October 18 2021.

18. Based on the foregoing, I state as follows:

18.1   The coins seized are not and were never "counterfeit" within the meaning of 15 U.S.C. §§ 292-300 and 2102-2106.

18.2 The coins seized from Bingli Lin were uncurrent coins, as defined in 31 C.F.R. § 100.10 and there is no legal impediment to redeem them for cash.

18.3 The origin of the coins is the US Mint. The US agents never provided any proof to the contrary.

18.4 The coins ended up in industrial metal scrap yards in China and were salvaged from there during the process of intake at such yards.

18.5 The coins were sent from China to me in conspicuous, visible and fully transparent shipments, with full declarations, in a manner that has none of the characteristics used by forgerers or smugglers who do their shenanigans away from the public eye.

18.6 Bingli Lin and his colleagues are entitled to legally redeem the value of coins into cash.

18.7 The same kind of coins are ordinarily redeemed by commercial banks (if they are undamaged) and by Coinstar Inc. (if they are damaged or "uncurrent").

18.8 The coins passed customs clearance and could have been inspected at the point of entry.

18.9 Bingli Lin and his colleagues did not defraud anybody or defraud the Revenue or had intention to violate the law by redeeming the coins or bringing them from China for redemption in the US. Therefore, all reasons to remit seizes coins exist under 19 U.S.C. §1618.

18.10 At the time of requesting issuance of the warrants or making notice of detention, the federal agents had no probable cause.

18.11 Since the seizures of the coins (both in 2018 and 2021) the federal agents had plenty of time to test the metal composition of the coins.

18.12 In other similar cases of seizures of coins brought in from China the US Agents steadfastly refused to disclose what the probable cause was, or whether the coins seized were ever tested. See for example the case litigated in California: U.S. v. 5 Crates of Counterfeit Coins, CDCA, 2:20-cv-08487-MWF-RAO.

18.13 It is not worth it to forge coins for 25 cents or 10 cents. The value of the metal and the labor exceeds by far the face value of redemption.

18.14 The value of the 2018 seized properties is $10,000 and the damages are $8,000.

18.15 The value of the 2021 seized properties is $200,000 and the damages are $150,000.

18.16 After the coins seized in 2018, Bingli Lin sent a Petition for Remittance (see attached). Bingli Lin received no formal answer to my Petition, and never received a notice of intent to launch civil forfeiture proceedings within 60 days. See 18 U.S. § 983 (a)(1)(a)(i).

18.17 After the coins seized in 2021, Bingli Lin never received a notice of intent to launch civil forfeiture proceedings within 60 days. See 18 U.S. § 983 (a)(1)(a)(i).

18.18 Despite efforts of the US CBP and Homeland Security since 2008 to prove that there is an industry of forging coins in China that is abusing the US Mint Redemption Program, to date all coins that were seized and tested were proved to be genuine and originating from the US Mint. See the Report of the OIG from 2010 after a 21- month long investigation (explained hereafter), and the two related cases in Pennsylvania "One Black Porsche" and "Wealthy Max" (explained at length hereafter).

**The Impact of prior litigation in Philadelphia "One Black Porsche"**

19. A similar campaign by the US agents intended to stop the redemption of coins arriving from Chinese dumping yards at the US Mint has failed. In 2015 US agents filed a case in NJ (which was later transferred to Philadelphia) seeking civil forfeiture of similar coins valued between $5.5-$6 Million. See US v. One 2014 Black Porsche, Index No. **2:15-cv-05814-JS.**

20. The US claimed the same arguments in that case, that the coins were forged, that they did not originate from the US Mint, and that "all of the coins appeared to be corroded (having a greenish-brown patina) and mechanically deformed and/or chipped" (Compl. ¶36). They also argued that "clad coins can be reversed engineered" (Compl. ¶38), and that the "level of detail needed to make them appear genuine would be much lower" (Compl. ¶39). In ¶46 of the Complaint it was alleged that CBP laboratory analysis found "aluminum and silicon which are not found in genuine US coins".

21. However, other than speculations about a possibility of reverse engineering and the same color of corrosion, the US Gov't did not provide any evidence that the coins were indeed not genuinely originated from the US Mint.

22. The defendants submitted an expert report of Mr. Richard Baron who is an expert in forensic engineering and chemical compositional testing who negated all the speculations of the US Gov't (Docket #30). Mr. Baron explained that "the detection of aluminum and silicon during chemical analysis is not uncommon, since such elements are very abundant in nature. The detection of such elements in metallic objects that have been mutilated would even be expected, either through the transfer of these elements from contact against other materials during the scrapping (or recycling) process or from exposure to the environment (e.g., soil)".

23. Also, Mr. Baron explained that the "analytical techniques employed" were not disclosed, and there was no information whether the sampled coins from the block of samples originally sent to the lab, actually represented the entire block, or cherrypicked items.

24. As to the allegation that the coins exhibited a "greenish-brown patina", the expert explained that this is exactly what is expected from old coins composed of 75 percent copper and 25 percent nickel: "the described patina exhibited by the coins is typical for copper rich materials and is not necessarily an indication that the subject coins were intentionally exposed to chemicals in order to mask their true appearance".

25. A hearing was conducted before the Hon. Judge Juan Sanchez in the Eastern District of Pennsylvania on July 14, 2015 and a week later on July 21, 2015 the Government notified it was withdrawing its complaint and the entire case was dismissed with prejudice.

26. At the hearing the US Attorney Zack Intrater admitted several times that many of the allegations in the complaint were false or baseless. See for example in Page 100 of the Transcript:

```
10          THE COURT:  So you concede you were factually wrong?
11          MR. INTRATER:  Yes.
12          THE COURT:  Okay.
13          MR. INTRATER:  Yes.
14          THE COURT:  About that.  I think there were a couple
15    of other examples.
16          MR. INTRATER:  Yes.
17          THE COURT:  They gave a whole bunch of examples.
18          MR. INTRATER:  Yes.  Judge, I mean, you know, string
19    us up, right, but like what are we trying to do?  We're
20    trying to amend the Complaint --
```

27. The attorneys for the 2 Chinese importers of the damaged coins argued successfully that their shipments of the coins were accepted by the US Mint, that the Mint did test them and decided they are authentic, sent the coins to be melted and the melted metal was used for minting fresh new coins that went into circulation. The Mint also approved the payment and issued a wire transfer. It was at the point that the District Attorneys intercepted and stopped the wire, and claimed that the coins were counterfeit.

28. However, when Judge Sanchez asked US Attorney Intrater what is the position of the Mint as to whether the coins were genuine or not, he admitted he has no idea. However, he insisted that the Chinese importers "fooled" the Mint.

29. The attorneys for the Defendants (the Chinese importers) submitted proof that prior shipments were tested by the Mint and found to be genuine US coins, and that a Report made by the OIG states that Defendant Wealthy Max's one shipment was tested and found that the coins were genuine.

30. Also as to the test which the US Attorney's Office did (not the Mint), the defense attorneys proved that it was never written that the samples were counterfeit and all it said was that .03% of the coins are laced with aluminum and silicone, but in fact all coins that come out of the Mint accumulate traces of aluminum and silicon on the outer part of the coin after coming in contact with things like cash register or vending machines, and that it is only natural that coins that are sent to be sorted in industrial scrap metal machines will accumulate a little more of these tracers.

31. Also during the hearing, the US Attorney Intrater admitted that it is not true what they wrote in the complaint that all coins imported from china must be coming from counterfeit sources, and it is not true what they wrote that the only source of coins that can arrive in China where US coins can be found is cars that are sent to be scrapped.

32. Also Mr. Intrater was unable to explain how the general and vague description of forgeries in China actually applied to the particular shipment of the defendants, and he was unable to explain how he will prove forgeries to the jury given that the coins were melted by the Mint, so there is actually no evidence to show to a jury (i.e. spoliation of evidence). In fact, Judge Sanchez told US Intrater that if indeed the melted coins were used to mint new coins, that appears to be an admission by the Government that the coins were indeed not counterfeit, because the Government itself used them to put out into circulation and use by the public.

33. As stated, within a week US Attorney Intrater announced that the Government was withdrawing its forfeiture case with prejudice.

34. In a related case where the defendant Wealthy Max was suing the Government for the unpaid shipments, Wealthy Max Limited v. US Treasury, 2:15-cv-05875-WB before the Hon. Judge Wendy Bettelestone, for additional shipments worth $3.25 Million for coins that were detained in the Ports of Los Angeles and New York.

35. These coins that arrives in L.A. were actually tested by the Government (CBP) and the Report dated Jan. 21, 2015 concluded that "The samples have a broad range of date, mint marks, and their weights and alloy compositions are indistinguishable from standard currency".  The coins that arrived in NYC were Dollar coins and they were also tested on February 10, 2015, and the same language was written in that report.

36. Nevertheless, all demands to remit back the detained coins were unanswered by the CBP.

37. One year and 4 months after the filing of the complaint, the attorneys for Wealthy Max notified the court on March 1, 2017 that the US Government paid fully for 2 shipments and was going to pay for the 3rd in 30 days in full.

38. I believe the two cases, One Black Porsche and Wealthy Max show that all possible arguments of the US Government that the shipments from China are counterfeit, or connected to some criminal activity, were already litigated at length and have finalized in an embarrassing defeat to the US Attorney Offices that launched them.

**39.** At the **One Black Porsche** hearing the Chinese importers attorneys presented to the Hon. Judge Sanchez a report of the OIG from an investigation that started in 2008 of a 21-month long investigation. It is **The OIA (Office of Inspector General) Report of Mint's Mutilated Coin Redemption Program, 2/16/2010.**

40. The summary of that OIG Report appears at the web site of Coinworld.com. Here is the excerpt:

> **Agents from the Treasury Office of Inspector General, U.S. Secret Service, and Immigration and Customs Enforcement, along with Mint representatives, on July 15, 2008, inspected the delivery from three foreign companies of suspected mutilated coins contained in 37 crates on three tractor-trailer trucks.**
>
> **The Treasury Office of Inspector General's Feb. 16, 2010, report did not identify the three companies nor the number of coins in the crates.**
>
> **Of the 37 crates, 11 were randomly selected, and the contents dumped onto a vibratory conveyor belt for coin inspection.**
>
> **Very few cents and 5-cent coins were found, while approximately 99 percent were dimes and quarter dollars. Two-thirds of the total coins submitted did not appear to be mutilated or damaged.**
>
> **A Mint metallurgist examined 50 samples from each of the 11 crates inspected and confirmed the contents were genuine U.S. Mint coins.**

41. See Coin World, Mint Adopts Mutilated Coin Redemption Program Changes, September 16, 2011, available at https://www.coinworld.com/news/precious-metals/mint-adopts-mutilated-coin-redemption-program.html.

42. Once again, I believe that this OIG Reports negates all possible claims that the coins seized from me were counterfeit, and I believe that the detentions and requests for warrants were made without probable cause, and without *bona fide*.

43. On November 9, 2021 Bingli Lin sent two Notice of Claim for the two seizures and supporting documents to the District Attorney in Texas and to Mr. Timothy M. Lemaux Fines, Penalties, and Forfeitures Office, United States Customs and Border Protection 7501 Esters Blvd., Suite 160, Irving, TX 75063. Bingli Lin did not receive any response.

44. On November 9, 2021 Bingli Lin also sent a demand for information under the freedom of Information act to find out what motivating the US Government to raid my house and seize the coins. Bingli Lin received a response that the Case number is

CBP-2022-017032 and that Bingli Lin should resubmit to the Secret Service. I did so, and never got a response.

45. I should note that someone alerted my Bank Wells Fargo, and they debited $29,000 from my husband's accounts and suspended the account on the allegation that they received information that my husband engage in trading counterfeit coins, which was a false information.

WHEREFORE, Judgment should be entered ordering the US Government to return all assets and properties seized from me, together with damages and attorney costs.

Dated:  Allen, TX
        February 2, 2022


_____
Joanna Chen

Certificate of Service

I BingLi Lin hereby certifies that I have served the attached motion papers to return property of Joanna Chen my wife by email upon the US District Attorney Office in Plano Texas

On:  February 2, 2022

By sending via email to the address

Mr. Timothy M. Lemaux
Fines, Penalties, and Forfeitures Office
United States Customs and Border Protection
7501 Esters Blvd., Suite 160
Irving, TX 75063                         DFWA-TCET@cbp.dhs.gov

Mr. Jay Combs
US Attorney Eastern District of Texas
Plano Office
101 E. Park Blvd., Suite 500
Plano, Texas 75074                       USATXE.Public-Affairs@usdoj.gov

_____
BingLi Lin